UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BRANDON MICHAEL HAYES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 25-13582-LTS |
| TRITON REGIONAL SCHOOL DISTRICT et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM AND ORDER ON MOTIONS TO DISMISS (DOC. NOS. 26, 28)

July 16, 2026

SOROKIN, J.

In May 2021, Brandon Michael Hayes was fired from his job as Assistant Wrestling Coach for the Triton Regional School District because he refused to enforce the District's COVID-19 masking policy.  On November 25, 2025, Hayes, who represents himself, filed suit against the District, the Triton Regional School Committee, Triton Superintendent Brian Forget (in his individual and official capacities), and the Massachusetts Commissioner of the Department of Elementary and Secondary Education ("DESE"), who is not identified by name but is sued in his official capacity.  Pending before the Court are two motions to dismiss, one filed by the DESE Commissioner and one filed by the Triton Defendants.  Doc. Nos. 26, 28.[1] The Court has carefully considered the papers.  For the reasons that follow, the motions to dismiss are ALLOWED.

---

[1] Citations to "Doc. No. __" reference items appearing on the Court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header or, for documents enumerated by paragraph, to paragraph numbers.

I.    FACTS[2]

From 2014 to 2021, Hayes was employed by the Triton Regional School District as an

Assistant Wrestling Coach.  Doc. No. 1 ¶¶ 8, 19; Doc. No. 1-4.  Before the events recounted

here, he "had no prior discipline."  Doc. No. 1 ¶ 19.  In 2019, the Athletic Director relayed

complaints from parents regarding Hayes's Facebook posts.  Id. ¶ 20.  (The record does not

reveal the contents of these posts or parental complaints, but they are not relevant to the

resolution of the pending motions.)  The Athletic Director urged Hayes to "'divorce' personal

views from anything associated with Triton," but Hayes was not disciplined for the posts.  Id.

Over the summer and early fall of 2020, Hayes and Superintendent Forget exchanged

numerous emails about a request by two of Hayes's supervisors—high school Principal Patrick

Kelley and Athletic Director Tim Alberts—to meet with Hayes regarding his role.  Doc. No. 1-2

at 1–21; Doc. No. 1-4.  After much back and forth, Forget sent Hayes a letter notifying Hayes

that Forget was contemplating terminating him for his refusal to meet with his supervisors.  Doc.

No. 1-2 at 10; Doc. No. 1-3 at 8–14.  Hayes later met with Forget and, eventually, with Kelley,

Alberts, and counsel.  Doc. No. 1-3 at 1–16 (transcript of Zoom conference with Forget); Doc.

No. 1-2 at 20–26.

Over email, Hayes and Forget discussed information the District received from the

Massachusetts Interscholastic Athletic Association ("MIAA") regarding athletics during the

2020–2021 school year, responding to the then-ongoing COVID-19 pandemic.  Doc. No. 1-2 at

---

[2] The Court draws these facts from Hayes's complaint, Doc. No. 1, accepting all well-pleaded facts and drawing all reasonable inferences in Hayes's favor, as it must on a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Exhibits attached to the complaint are considered part of the complaint.  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008); Fed. R. Civ. P. 10(c).  The Court also considers "(a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice," including "matters of public record," and "(c) concessions in a plaintiff's response to the motion to dismiss."  Newman v. Krintzman, 723 F.3d 308, 309 (1st Cir. 2013) (citation modified).

12–16, 26–29.  The wrestling season was delayed by MIAA because of the pandemic, and Forget notified Hayes once the District learned that wrestling would begin on April 26, 2021.  Id. at 28. Around this time, Hayes learned that student-athletes would be required to wear masks while exercising indoors, including while wrestling.  Doc. No. 1 ¶¶ 3, 22; Doc. No. 1-2 at 1.

On April 25, 2021, Hayes told Forget, Alberts, and wrestling head coach Shawn McElligott via email that he was "not going to stand around and oversee children be abused [made to workout in masks]."  Doc. No. 1-2 at 30 (bracketed alteration in original).  He elaborated, "You're putting on an obedience show.  And you come back with well the state and MIAA says so: 'Just following orders'; your school's policy, it sounds super familiar as a corollary to a not so recent past."  Id.

The next day, Forget responded that, while Hayes was entitled to his "personal opinions on this and other matters," his opinions did not permit him to "disregard formal district policies that all students and employees must follow."  Id. at 31.  Forget continued, "You stated . . . that you will not monitor/oversee or require/remind student-athletes to wear masks, which is a requirement of your job as coach this year."  Id.  Because Hayes had "clearly stated that [he] did not intend to fulfill the requirements of [his] job," Forget notified Hayes that he was "considering [Hayes's] termination from [his] position of assistant coach effective immediately."  Id.

Forget offered to hold a Zoom conference to discuss the termination decision; Hayes agreed, and they met on April 28, 2021.  Id. at 31–32.  Per the complaint, Forget "stated he was 'following DESE policy' and that [Hayes's] 'opinions do not matter,' signaling refusal would be treated as insubordination."[3]  Doc. No. 1 ¶ 23 (citing Doc. Nos. 1-2, 1-3).  Hayes reiterated his

---

[3] The complaint places these phrases in quotation marks, suggesting they are quotes from Forget. Neither the transcript of the Zoom conference nor the emails Hayes attached to his complaint

position that he would not wear a mask nor require the students he coached on the wrestling team to wear them.  Doc. No. 1-3 at 26.  Following that meeting, Forget sent Hayes a letter, by email and certified mail, notifying Hayes that he was terminated from the Assistant Wrestling Coach position.  Doc. No. 1-4 at 1 (letter dated April 30, 2021); Doc. No. 1-2 at 33 (noting letter was received via certified mail on May 1, 2021, and transmitting letter via email dated May 3, 2021).

Forget terminated Hayes "solely for refusing to enforce masked wrestling."  Doc. No. 1 ¶ 24 (citing Doc. No. 1-3).  Forget's termination letter explained that Hayes had repeatedly expressed he would not enforce the mask policy, which was a job requirement, and that he was being terminated because of his "repeated confirmation that [he would] not fulfill the duties of the job of an assistant coach as required."  Doc. No. 1-4 at 1.  Hayes's "insubordination" designation was circulated to administrators and stored in personnel systems.  Doc. No. 1 ¶ 25.

In August 2021—several months after Hayes's termination—DESE announced a statewide masking policy for public schools.  Doc. No. 1 ¶ 21; Doc. No. 1-7; see also Memorandum from Jeffrey C. Riley, Comm'r, Mass. Dep't of Elem. & Secondary Educ., Extension of Mask Requirement in Public Schools (Sep. 27, 2021), https://www.mma.org/wp-content/uploads/2021/09/DESE_ExtensionMaskMandate-9.27.21.pdf [https://perma.cc/YU3J-E6NZ] (noting policy adopted August 24, 2021), cited in Doc. No. 1-7.  Among other things, the policy provided, "Masks are required for any sports-related activity for student-athletes and coaches when indoors, in alignment with guidance provided by the [MIAA]."  Doc. No. 1-7 at 2.  DESE's policy was in place until February 28, 2022.  See Memorandum from Jeffrey C. Riley, Comm'r, Mass. Dep't of Elem. & Secondary Educ., Update on DESE Mask Requirement (Feb.

---

feature Forget saying he was "following DESE policy," though Forget does refer to the "state" and the "system."  See Doc. Nos. 1-2, 1-3.

4

28, 2022), https://archives.lib.state.ma.us/server/api/core/bitstreams/21ecd55b-3436-4b71-802d-e4088c60c78a/content [https://perma.cc/8CLA-GLX9].[4]

In 2023, Hayes testified at a state legislative hearing regarding his opposition to several DESE mandates (none expressly related to COVID-19, masking, or wrestler safety). Doc. No. 1 ¶¶ 16, 26; Doc. No. 1-5. According to the complaint, at some point Hayes's "long-standing Facebook account" was disabled "amid stigma circulation." Doc. No. 1 ¶ 27. This disabling impeded Hayes's ability to "rebut charges and maintain community ties." Id.

Hayes filed suit on November 25, 2025. Doc. No. 1. He asserts three § 1983 claims against all the defendants—First Amendment retaliation, stemming from his termination and the denotation of "subordination" in his personnel file (Count I), procedural due process violation, for the same conduct (Count IV),[5] and substantive due process violation, for requiring Hayes to enforce the mask mandate on his wrestlers (Count V). He asserts a Monell § 1983 claim against the District and School Committee (Count VI). Hayes also asserts two state-law claims stemming from his termination: wrongful termination in violation of public policy, against the District and Superintendent Forget (Count II), and violation of a state whistleblower law, against the District (Count III). Finally, he asserts an Ex parte Young claim against the DESE

---

[4] Although Hayes's complaint does not specify when the DESE policy was in effect, he attaches DESE memoranda implementing the policy to his complaint, Doc. No. 1-7, and he acknowledges in his opposition to the motions to dismiss that it is "undisputed" that the "statewide written mandate did not exist at the time of [his] termination," Doc. No. 32 at 2. The Court takes notice of these public policy announcements, which are referenced extensively in the complaint, and of Hayes's concession that the DESE policy was not in effect at the time he was fired. See Newman, 723 F.3d at 309.

[5] Hayes's procedural due process claim invokes the "stigma-plus" doctrine, under which a plaintiff "who claims a violation of her procedural due process rights based on reputational harm must show that the challenged governmental action adversely impacted some right or status previously enjoyed by her under substantive state or federal law." URI Student Senate v. Town of Narragansett, 631 F.3d 1, 9–10 (1st Cir. 2011) (citing Paul v. Davis, 424 U.S. 693, 710–12 (1976)); see also, e.g., Pendleton v. City of Haverhill, 156 F.3d 57, 63 (1st Cir. 1998).

Commissioner "seeking a declaration that masked-wrestling mandates are unconstitutional as applied and an injunction prohibiting re-imposition" (Count VII).  Hayes seeks (1) a declaratory judgment that the defendants violated his First and Fourteenth Amendment rights; (2) injunctive relief in the form of an injunction "prohibiting re-imposition of masked wrestling" and orders requiring (a) expungement of his termination and references to his "insubordination" from all personnel records, (b) a "name-clearing hearing," and (c) a "published corrective declaration" for (among other things) restoration of his Facebook account; (3) damages against the Triton Defendants; and (4) costs and fees.  Doc. No. 1 at 6–7.

The DESE Commissioner and the Triton Defendants moved to dismiss.  Doc. Nos. 26, 28.  Hayes opposed.[6]  Doc. Nos. 30–32.  No party requested oral argument.  Having carefully considered the papers, the Court concludes that oral argument is not necessary for exposition of the issues presented.  The Court now resolves the motions to dismiss.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This standard requires more than "labels and conclusions" or "naked assertions devoid of further factual enhancement." Id. (citation modified).  In considering a motion to dismiss, a court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor.  Watterton v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  A court disregards factual allegations in the complaint that have been

---

[6] Hayes filed three responses to the two motions to dismiss.  Doc. Nos. 30–32.  The Court considers all three filings in resolving the pending motions.

Since the inception of this case, Hayes has also filed several notices describing the proceedings of other pending lawsuits he has filed.  Doc. Nos. 6, 9, 20, 21, 22, 23, 24, 25, 33, 34. These filings have no apparent bearing on the motions to dismiss, and Hayes sought no relief through them.  The Court takes no action on these notices.

"conclusively contradicted" by other materials properly considered on a motion to dismiss. Lister v. Bank of Am., N.A., 790 F.3d 20, 23 (1st Cir. 2015).  Pleadings filed by parties representing themselves are "liberally construed."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation modified); accord Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75 (1st Cir. 2014). But this principle "does not relieve a pro se litigant of the requirement to plead basic facts sufficient to state a claim."  Theroux v. Mici, 774 F. Supp. 3d 266, 272–73 (D. Mass. 2025) (citing Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980)).

"Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense are clear on the face of the plaintiff's pleadings."  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citation modified).  A motion to dismiss based on the running of the statute of limitations will be granted "when the pleader's allegations leave no doubt that an asserted claim is time-barred."  Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010) (citation modified); accord Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001).  If the limitations period appears to have run on the face of the plaintiff's pleadings, dismissal is appropriate unless the plaintiff "sketch[es] a factual predicate that would warrant the application of either a different statute of limitations period or equitable estoppel."  Trans-Spec, 524 F.3d at 320 (citation modified).

III.    DISCUSSION

A.    Preliminary Matters

Before turning to the merits of the motions to dismiss, the Court briefly addresses two concerns raised in Hayes's opposition briefing.  First, Hayes notes that the Massachusetts Attorney General's Office ("AGO") represents the DESE Commissioner in this case, and that Hayes has pending claims against the Attorney General in separate (apparently unrelated) federal

litigation.  Doc. No. 30 at 1–2 (citing Commonwealth ex rel. Hayes v. City of Boston, No. 25-cv-12881-ADB (filed Oct. 2, 2025)).  Hayes does not allege "personal bias" or a conflict of interest.  Id. at 2.  Instead, he suggests that the Attorney General's litigation positions in the other case conflict with positions taken by the AGO in this case, on behalf of the DESE Commissioner, regarding the Commonwealth's relationship to localities.  Id.; see also Doc. No. 31 at 1–2.

Hayes's argument sounds in collateral estoppel—the principle that "bars relitigation of any factual or legal issue that was actually decided in previous litigation between the parties, whether on the same or a different claim."  Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994) (citation modified); accord Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc., 590 U.S. 405, 411 (2020).  His argument misses the mark for several reasons.  For just one, the other case Hayes references has not reached a final judgment.  See Commonwealth ex rel. Hayes v. City of Boston, No. 25-cv-12881-ADB (filed Oct. 2, 2025); see also Grella, 42 F.3d at 30–31 (noting issue "must have been determined by a valid and binding final judgment" and must have been "essential to the judgment").  In any event, as the Court will explain, nothing in its resolution of the pending motions turns on the DESE Commissioner's (or Commonwealth's) "supervisory relationship to Triton," whether "attenuated" or "authoritative."  Doc. No. 30 at 2.

Second, Hayes objects to an earlier order extending the defendants' deadline to respond to Hayes's complaint.  Doc. No. 30 at 2–3; Doc. No. 31 at 2; see also Doc. Nos. 13, 14, 16, 18.  On December 12, 2025, the defendants filed a joint motion requesting an extension of time to February 16, 2026, to file their responsive pleadings; they also requested that the Court set a unified briefing schedule.  Doc. No. 13.  Triton Defendants' counsel certified that she had conferred with Hayes over email but that the parties were unable to reach agreement.  Id. at 4.  On December 15, the Court ordered Hayes to make any response to the motion by December 17.

Doc. Nos. 14–15.  On December 17, Hayes filed a document he titled "Notice of Structural Posture, Administrative Reconciliation Path, and Holiday Stay Framework."  Doc. No. 16.  The Court reviewed this filing and discerned no articulated objection to the defendants' motion.  The Court allowed the motion and noted the absence of an objection in Hayes's filing.  Doc. No. 18.

Now, Hayes argues that he "expressly objected to consolidated structural treatment and explained why the DESE Commissioner's and Triton's defenses were not legally interchangeable," Doc. No. 30 at 3, and "expressly objected to consolidated structural positioning and raised incompatibility concerns," Doc. No. 31 at 2.  To be clear, the Court's order permitting the defendants to file their responsive pleadings on the same, later date did not render the DESE Commissioner's and Triton Defendants' defenses "legally interchangeable" or otherwise alter their substantive positions.  Indeed, the state and local defendants filed separate motions to dismiss, Doc. Nos. 26, 28, to which Hayes separately (and then jointly) responded, Doc. Nos. 30–32.  The defendants' request for an extended responsive-pleading deadline and unified briefing schedule was reasonable, and Hayes has identified no prejudice from these requests.  To the extent Hayes's objection is construed as a motion to reconsider, that motion is DENIED.  The Court adheres to its earlier Order.  Doc. No. 18.

B.    Claims Against Triton Defendants

Hayes filed this suit on November 25, 2025.  Doc. No. 1.  At that point, more than four and a half years had elapsed since his termination—the event from which all his claims stem.[7] The Triton Defendants argue that Hayes's claims are barred by the applicable statutes of

---

[7] In one paragraph of his complaint, Hayes alleges that he was "terminated solely because he refused to compel minors to wrestle while masked . . . and because he spoke publicly against that mandate, including under oath before the Massachusetts Legislature."  Doc. No. 1 ¶ 2 (emphasis added).  Insofar as this allegation suggests Hayes was terminated because of his testimony before the legislature, that allegation is conclusively contradicted by the rest of the complaint—Hayes testified in 2023, more than a year after his termination.  Doc. No. 1 ¶ 26; Doc. No. 1-5.

limitations.  Doc. No. 29 at 3–5.  Hayes does not dispute the defendants' identification of the applicable statutes of limitations, but he argues that he has alleged continuing violations or that the limitations period should be equitably tolled.  Doc. No. 31 at 3–4; Doc. No. 32 at 5–6.

Section 1983 does not contain its own statute of limitations; instead, courts "ordinarily must borrow the forum state's limitation period governing personal injury causes of action." Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001).  In Massachusetts, the statute of limitations for personal-injury actions is three years.  Id. (citing Mass. Gen. Laws ch. 260, § 2A). Courts also borrow state law's "coordinate tolling rules."  Ouellette v. Beaupre, 977 F.3d 127, 135 (1st Cir. 2020) (quoting Bd. of Regents of Univ. of N.Y. v. Tomanio, 446 U.S. 478, 484 (1980)).  Accrual, by contrast, is governed by federal law.  Id. at 135–36.  A § 1983 claim "accrues at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claim."  Nieves, 241 F.3d at 52; see also Ouellette, 977 F.3d at 136 ("[A] plaintiff must, or should, be aware of both the fact of his or her injury and the injury's likely causal connection with the putative defendant.").

Hayes's claim for wrongful termination in violation of public policy sounds in tort.  See Doc. No. 1 ¶ 34.  Accordingly, the same three-year statute of limitations applies to his wrongful-termination claim.  Mass. Gen. Laws ch. 260, § 2A; see also, e.g., Ryan v. Holie Donut, Inc., 977 N.E.2d 64, 67 (Mass. App. Ct. 2012) (characterizing wrongful termination as a tort action); Norris v. Lumbermen's Mut. Cas. Co., 881 F.2d 1144, 1152–53 (1st Cir. 1989) (similar).[8]

---

[8] The Triton Defendants assert that the three-year limitations period for personal-injury actions applies to this claim.  Doc. No. 29 at 4.  Hayes does not dispute this assertion.  See Doc. Nos. 30–32.  The Court notes that a Massachusetts wrongful-termination claim may sound in tort or in contract, though it typically sounds in tort (as it does here) because it does not typically stem from a breach of the parties' employment agreement.  See Janz Corp. v. Philips N. Am. LLC, No. 23-cv-11025-FDS, 2024 WL 555673, at *5 (D. Mass. Feb. 12, 2024); see also DeRose v. Putnam Mgmt. Co., Inc., 496 N.E.2d 428, 432 & n.7 (Mass. 1986) (holding plaintiff's wrongful-

Finally, the Massachusetts Whistleblower Act has a two-year statute of limitations. Mass. Gen. Laws ch. 149, § 185(d).  Claims accrue "when a whistleblower knows or reasonably should have known that he or she has been retaliated against for engaging in protected conduct." Tryon v. Mass. Bay Transp. Auth., 159 N.E.3d 177, 184 (Mass. App. Ct. 2020).

On the face of his complaint, Hayes's claims are plainly time-barred.  Hayes's First Amendment retaliation claim (Count I), wrongful termination claim (Count II), Whistleblower Act claim (Count III), and procedural due process claim (Count IV) each stem directly from his May 2021 termination.  Doc. No. 1 ¶¶ 30–36.  Hayes had two or three years to bring these claims, but he waited more than four.  Nieves, 241 F.3d at 51; Mass. Gen. Laws ch. 260, § 2A; Mass. Gen. Laws ch. 149, § 185(d).  Hayes's substantive due process claim (Count V) appears to arise from the District's requirement that Hayes enforce the masking policy on his wrestlers.[9] See Doc. No. 1 ¶ 37 (alleging "punishing refusal to endanger minors violates substantive due process").  That alleged injury coincided with his termination, and it is time-barred for the same reasons.  Finally, Hayes's Monell claim (Count VI) challenges the District's masking policy, at

termination theory sounded in contract while noting other courts have permitted plaintiffs to "seek liability in tort" and collecting cases); Ryan, 977 N.E.2d at 67 (characterizing wrongful termination as tort action); United States ex rel. Lokosky v. Acclarent, Inc., 675 F. Supp. 3d 15, 26 (D. Mass. 2023) ("Under Massachusetts law, a claim for wrongful termination in violation of public policy sounds in tort.").  The distinction sometimes matters, because the Massachusetts statute of limitations for typical contract actions is six years.  Mass. Gen. Laws ch. 260, § 2.  But it does not matter here, where Hayes's claim sounds in tort, and where Hayes has waived any argument to the contrary.

[9] This claim could also be understood as seeking to vindicate the wrestlers' substantive due process rights.  See Doc. No. 1 ¶ 37 (alleging "[c]onditioning youth wrestling participation on masked anaerobic exertion created an unreasonable risk to student health that shocks the conscience").  It is far from obvious that Hayes would have standing to bring such a third-party claim.  See, e.g., Powers v. Ohio, 499 U.S. 400, 410–11 (1991) (explaining that, outside of "certain, limited exceptions," a "litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties").  In any event, such a claim would be time-barred for the same reasons Hayes's Monell claim is time-barred.

least as applied to wrestling.  Id. ¶ 38.  But the complaint does not allege, and nothing before the Court suggests, that the masking policy for wrestling was effective in or after November 25, 2022, as would be required to make this claim timely.  All of Hayes's claims against the Triton Defendants are time-barred.

Hayes invokes the continuing-violation doctrine to argue that his claims are timely, or at least his procedural due process claim is.  Doc. No. 31 at 3; Doc. No. 32 at 5.  (He does not specify when his claims accrued if not at the point of his termination.)  This doctrine "allows a plaintiff to incorporate allegations that would otherwise be time-barred if they 'are part of the same unlawful employment practice and at least one act falls within the time period.'" Ayala-Sepulveda v. Municipality of San German, 671 F.3d 24, 30 & n.6 (1st Cir. 2012) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)).  The "continuing-violation" doctrine "may sound auspicious for late-filing plaintiffs, [but] it does not allow a plaintiff to avoid filing suit as long as some person continues to violate his rights." Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008) (emphasis in original).  "The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." Id. (citation modified).  In considering this doctrine, it is "imperative that [courts] distinguish between the occurrence of [an unlawful] act and the later effects of that act." Gorelik, 605 F.3d at 123 (quoting Mack v. Great Atl. & Pac. Tea Co., Inc., 871 F.2d 179, 182 (1st Cir. 1989)); accord Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994) (collecting cases).

Hayes contends that his complaint alleges both "ongoing denial of [a] name-clearing opportunity and continuing collateral consequences." Doc. No. 32 at 5.  He argues that "[m]aintenance of [a] stigmatizing designation in employment records constitutes continuing

12

adverse effect." Id.; see also Doc. No. 31 at 3 (arguing Hayes has alleged "[o]ngoing reputational harm," "[c]ontinued reliance upon stigmatizing characterizations," "[a]bsence of meaningful name-clearing hearing," and "[c]ontinuing professional injury"). For all these reasons, he says, his claims are timely. Hayes's arguments fail for two reasons. First, Hayes conflates continuing violations with continuing effects. See Gorelik, 605 F.3d at 123. He says that he continues to experience reputational harm, stigma, and professional injury. But those are all the ongoing effects of the original, discrete harm: his termination and the documentation of his "insubordination" in his personnel file. Second, Hayes's contention that his claim has not yet accrued because he has not yet received a "meaningful name-clearing hearing" mistakes his anticipated remedy for an injury. Hayes has not shown that his claims fit within the narrow continuing-violation doctrine.

Hayes alternatively argues that the limitations periods on his claims should be equitably tolled. Doc. No. 31 at 4; Doc. No. 32 at 5–6. "Equitable tolling is to be used sparingly, and the circumstances where tolling is available are exceedingly limited." Halstrom v. Dube, 116 N.E.3d 626, 632 (Mass. 2019) (citation modified). These "exceedingly limited" circumstances may be found where a defendant "made . . . affirmatively misleading statements to lull plaintiffs into not asserting [their] claims," id. (citing Adamczyk v. Augat, Inc., 755 N.E.2d 824, 829–30 (Mass. App. Ct. 2001)), or, in some cases, where a "plaintiff is excusably ignorant about" a statutory filing period, Andrews v. Arkwright Mut. Ins. Co., 673 N.E.2d 40, 41 (Mass. 1996).

None of Hayes's allegations or arguments put his claims within the "exceedingly limited" circumstances meriting equitable tolling. First, Hayes argues that there was "[p]andemic-era disruption affecting access to process." Doc. No. 31 at 4; see also Doc. No. 32 at 6. He makes no factual allegations to support this argument, nor does he explain whether or how pandemic-

13

era disruptions affected his access to the legal process in 2023 (when the clock ran on his Whistleblower Act claim) or 2024 (when the clock ran on his § 1983 and wrongful-termination claims).  Second, he argues that "[p]rolonged post-COVID neurological and cognitive impairment materially limit[ed] [his] ability to initiate complex federal litigation during the relevant period."  Doc. No. 31 at 4; see also Doc. No. 32 at 6.  Hayes offers no factual support for this claim, which is raised only in his opposition briefing and not in his complaint or its attached exhibits.  Finally, Hayes asserts that his "[c]ontinuing constitutional injury" requires equitable tolling.  Id.  But this is just another way of getting at the continuing-violation doctrine, and this attempt fares no better.  Hayes has not plausibly "sketch[ed] a factual predicate that would warrant the application of either a different statute of limitations period or equitable estoppel."  Trans-Spec, 524 F.3d at 320 (citation modified).

Hayes's claims in Counts I through VI accrued more than four years before he filed suit.  The Triton Defendants have shown that those claims are time-barred, and Hayes has not shown otherwise.  The Triton Defendants' motion to dismiss (Doc. No. 28) is ALLOWED.

   C. Claims Against DESE Commissioner

Hayes's three § 1983 claims against the DESE Commissioner (i.e., his First Amendment retaliation, procedural due process, and substantive due process claims) are all time-barred for the same reasons the Court explained above.  None advances new or different allegations against the DESE Commissioner from those alleged against the Triton Defendants.  All stem from Hayes's May 2021 termination.  All were brought more than a year beyond the three-year limitations period.  And, as the Court has explained, Hayes has not plausibly alleged a basis for invoking the continuing-violation doctrine or equitable tolling.  The Court need not go further to

14

conclude that the DESE Commissioner's motion to dismiss (Doc. No. 26) is ALLOWED as to Counts I, IV, and V.[10]

That leaves Count VII, which Hayes asserts against the DESE Commissioner alone.  Doc. No. 1 ¶ 39.  Styling his claim as one for "prospective relief under Ex parte Young," Hayes "seeks a declaration that masked-wrestling mandates are unconstitutional as applied and an injunction prohibiting re-imposition absent wrestling-specific safety findings and informed-consent compliance consistent with federal and constitutional standards."  Id.  The DESE Commissioner argues, among other things, that Count VII is moot.  Doc. No. 27 at 7–13.

"Federal judges decide only live controversies that will have a real effect on real parties in interest."  Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 8 (1st Cir. 2021) (emphasis in original) (citing U.S. Const. art. III, §§ 1–2).  The "key question 'is whether the relief sought would, if granted, make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation).'"  Id. (quoting Air Line Pilots Ass'n, Int'l v. UAL Corp., 897 F.2d 1394, 1396 (7th Cir. 1990)).  "If the answer is no, 'then the court is not really deciding a "case," and . . . it is therefore exceeding the power conferred on it by . . .  the Constitution.'"  Id. (quoting Air Line Pilots Ass'n, 897 F.2d at 1396). The requirement that federal courts adjudicate only "live" cases with real effects on parties' legal interests ensures federal courts do not issue mere advisory opinions.  Id. at 8 n.3 ("Mootness doctrine, and [federal courts'] consequent inability to render judgment on . . . hypothetical or

---

[10] The Court acknowledges that, in addition to his statute-of-limitations defense, Doc. No. 27 at 15–17, the DESE Commissioner raises a likely meritorious state-sovereign-immunity defense to Hayes's § 1983 claims, all of which allege only past wrongs rather than ongoing ones, id. at 13–15 (citing U.S. Const. amend. XI; Cotto v. Campbell, 126 F.4th 761, 767–68, 771 (1st Cir. 2025)).  Because the Court's resolution of the statute-of-limitations defense fully resolves the same claims, and in the interest of judicial economy, however, it need not address that additional reason for dismissal.

advisory questions, supplies a significant portion of what distinguishes the role of the federal judge from that of the advisor or academic in our constitutional order." (quoting Wyoming v. U.S. Dep't of Interior, 587 F.3d 1245, 1250 (10th Cir. 2009) (Gorsuch, J.))).

As all agree, DESE's COVID-19 masking policy expired more than four years ago. Doc. No. 27-2 (memorandum from DESE Commissioner announcing that "Commissioner will not renew the state mask requirement after it expires on February 28, 2022"); Doc. No. 30 at 4, 6 (acknowledging policy expired). The long-expired masking policy does not affect Hayes's legal interests, even if he continues to view it as unwise, unjust, and unconstitutional. See Bos. Bit Labs, Inc., 11 F.4th at 8–9. Because there is "no ongoing conduct to enjoin," Hayes's claim for injunctive relief is moot. Id. at 9 (quoting Town of Portsmouth v. Lewis, 813 F.3d 54, 58 (1st Cir. 2016)). His claim for declaratory relief is similarly moot because this dispute, over the constitutionality of an expired policy, "is at this point neither immediate nor real." Id. (quoting Lewis, 813 F.3d at 59). This conclusion is unsurprising given the numerous rulings dismissing as moot challenges to policies adopted in response to the COVID-19 pandemic. See, e.g., id. at 8–9; Calvary Chapel of Bangor v. Mills, 52 F.4th 40, 46–51 (1st Cir. 2022); Corrigan v. Bos. Univ., 98 F.4th 346, 352–54 (1st Cir. 2024).

When (as here) a "requirement that led the parties to a parting of the ways is no longer operative," a lawsuit challenging the inoperative policy "presents a classic illustration of mootness."[11] Corrigan, 98 F.4th at 352. The mootness doctrine has certain limited exceptions,

---

[11] It is not clear that the challenged DESE policy did lead to the parting of the ways here, since it was adopted three months after Hayes's termination for his unwillingness to comply with District policy. See Doc. No. 1 ¶ 21; Doc. No. 1-7. But this shortcoming only further illustrates that Hayes's claim cannot be heard in federal court. See, e.g., Spokeo, Inc. v. Robins, 578 U.S. 330, 337–38 (2016) (noting the "irreducible constitutional minimum" of Article III standing requires plaintiff to have (1) suffered a cognizable injury in fact both (2) traceable to defendant's challenged conduct and (3) likely to be redressed by favorable judicial decision).

but none applies here.  There is no plausible suggestion that the "voluntary cessation" exception applies, given the policy expired more than three years before Hayes filed this suit and nothing indicates DESE will imminently reimpose the same or a similar policy.  See id. at 353.  Nor has Hayes demonstrated (or even argued) that this case presents an issue capable of repetition yet evading review; there is nothing "inherently transitory" about a state-imposed masking policy. See id. at 353–54 ("[C]hallenges to university-vaccination policies are not among or closely analogous to the 'inherently transitory' claims that the Supreme Court has previously found to fit this exception." (quoting Harris v. Univ. of Mass. Lowell, 43 F.4th 187, 194 (1st Cir. 2022))).

"[F]ederal courts 'are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong.'"  Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 53 (1st Cir. 2013) (quoting Spencer v. Kemna, 523 U.S. 1, 28 (1998)).  The relief Hayes seeks—a declaration of the unconstitutionality of a (long-expired) state policy and an injunction barring state officials from hypothetically re-instituting that policy in the future, Doc. No. 1 ¶ 39—is precisely the kind of advisory opinion that is beyond the scope of the federal judicial power.  See, e.g., Lewis, 813 F.3d at 59 (explaining that federal courts "generally consider the law as it exists at the time of [their] review, not as it might speculatively exist in the future," and are not "permitted to issue an advisory opinion on hypothetical conduct" (citation omitted)).  This Court cannot and will not issue such an impermissible advisory opinion.

Because Hayes's claim for prospective injunctive relief fails to present a live case or controversy, the DESE Commissioner's motion to dismiss is ALLOWED as to Count VII.

D.    Pending Motion

There is one more issue.  On December 10, 2025, Hayes filed a motion titled "Motion for Recognition of Clean Custody, Supervisory Assignment, and Management of the Hayes Docket Constellation."  Doc. No. 8.  Through that motion, Hayes asked the undersigned to assume

"supervisory authority" over three other suits Hayes has filed in this Court, each assigned to different Sessions.  Id. at 2.  Hayes stated that he did not seek consolidation of the cases, id., nor did he mark the cases as related when he filed them, see L.R. 40.1(g).  Hayes cites no authority for this request, and the Court is aware of no authority authorizing one district judge to "supervise" cases assigned to another district judge.  In any event, the Court's dismissal of this case renders Hayes's motion moot.

IV.    CONCLUSION

For the foregoing reasons, the motions to dismiss (Doc. Nos. 26, 28) are ALLOWED.  Hayes's complaint (Doc. No. 1) is DISMISSED.  The pending motion (Doc. No. 8) is TERMINATED AS MOOT.  The Clerk shall enter a judgment of dismissal and close the case.

SO ORDERED.


 /s/ Leo T. Sorokin
United States District Judge

18